## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CASSANDRA SCHAEFFER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:13-342 |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | Magistrate Judge Lisa Pupo Lenihan |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.     Introduction

Plaintiff Cassandra Schaeffer ("Schaeffer") brings this action pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of

Social Security ("Commissioner") denying her application for supplemental security income

("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f].

The matter is presently before the Court on cross-motions for summary judgment filed by the

parties pursuant to Federal Rule of Civil Procedure 56.  ECF Nos. 11 & 13.  For the reasons that

follow, Schaeffer's motion for summary judgment (*ECF No. 11*) will be denied, the

Commissioner's motion for summary judgment (*ECF No. 13*) will be granted, and the

Commissioner's decision will be affirmed.

### II.     Procedural History

Schaeffer protectively applied for disability insurance benefits and SSI benefits under

Titles II [42 U.S.C. §§ 401-433] and XVI of the Act on December 21, 2010, alleging that she had

become "disabled" on January 21, 1999.  R. at 24, 170, 172.  Ten days later, Pennsylvania's

Bureau of Disability Determination ("Bureau") denied the application for disability insurance

benefits on the ground that Schaeffer was not insured for benefits under Title II. R. at 87. The

Bureau denied the application for SSI benefits on March 9, 2011. R. at 91. Schaeffer responded

on March 23, 2011, by filing a request for an administrative hearing.[1] R. at 97-99. On June 4,

2012, a hearing was held in Erie, Pennsylvania, before Administrative Law Judge ("ALJ") James

J. Pileggi. R. at 41. Schaeffer, who was represented by counsel, appeared and testified at the

hearing. R. at 46-63. Frances N. Kinley ("Kinley"), an impartial vocational expert, provided

testimony about the expectations of employers existing in the national economy. R. at 63-66. In

a decision dated June 15, 2012, the ALJ determined that Schaeffer was not "disabled" within the

meaning of the Act. R. at 24-35.

On June 26, 2012, Schaeffer sought administrative review of the ALJ's decision by filing

a request for review with the Appeals Council. R. at 18-20. The Appeals Council denied the

request for review on September 26, 2013, thereby making the ALJ's decision the final decision

of the Commissioner in this case. R. at 5. Schaeffer commenced this action on November 19,

2013, seeking judicial review of the Commissioner's decision. ECF No. 1. Schaeffer and the

Commissioner respectively moved for summary judgment on March 11, 2014, and April 24,

2014.[2] ECF Nos. 11 & 13. In accordance with 28 U.S.C. § 636(c)(1), the parties have given

their consent to have this matter adjudicated by a United States Magistrate Judge. ECF No. 10.

The motions for summary judgment filed by the parties are ripe for disposition and will be

resolved in this memorandum opinion.

---

[1] Schaeffer initially executed a handwritten waiver of her right to personally appear for the hearing. R. at 96. She stated that she did not have adequate transportation to attend the hearing, and that she would suffer from anxiety attacks whenever she needed to leave her house. R. at 96. On April 19, 2011, Schaeffer revoked her waiver in a letter authored by her attorney. R. at 102.

[2] The Court acknowledges that judicial review under the Act is not governed by the standards generally applicable under Federal Rule of Civil Procedure 56. *Banks v. Shalala*, 43 F.3d 11, 13-14 (1st Cir. 1994); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985). In this context, the procedure typically employed at the summary-judgment stage of litigation "merely serves as a convenient method under which both parties may present appropriate briefs in support [of] and in opposition to the[ir] respective positions." *Sumler v. Bowen*, 656 F.Supp. 1322, 1330 (W.D.Ark. 1987).

**III.** **Standard of Review**

This Court's review is plenary with respect to all questions of law.  *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999).  With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence."  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).  The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986).  Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted).  As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Overall, the substantial evidence standard is a deferential standard of review."  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental

impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether

the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV.     The ALJ's Decision

In his decision, the ALJ determined that Schaeffer had not engaged in substantial gainful activity subsequent to her application date. R. at 26. Schaeffer was found to be suffering from a bipolar disorder, an anxiety disorder, and a borderline personality disorder. R. at 26. These impairments were deemed to be "severe" under the Commissioner's regulations. R. at 26; 20

C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Schaeffer's impairments did

not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

R. at 26-30.

In accordance with 20 C.F.R. §§ 416.945-416.946, the ALJ assessed Schaeffer's

"residual functional capacity"[3] as follows:

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform a full range of work at all exertional levels
> but with the following nonexertional limitations: she is limited to simple,
> repetitive, routine work processes and settings with no high stress, no high quotas
> or close attention to quality production standards; no exposure to crowds and no
> more than incidental interactions with the public and no team work.

R. at 30. Although Schaeffer had briefly stocked shelves for a Dollar General department store,

that work activity did not last long enough to constitute "past relevant work"[4] under the

Commissioner's regulations. R. at 48. Consequently, the fourth step of the sequential evaluation

process was resolved in Schaeffer's favor. R. at 34.

Schaeffer was born on April 25, 1985, making her twenty-five years old on her

application date and twenty-seven years old on the date of the ALJ's decision. R. at 46. She was

classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. § 416.963(c).

Schaeffer had the equivalent of a high school education and an ability to communicate in

English. R. at 47, 194, 196; 20 C.F.R. § 416.964(b)(4)-(5). Given the applicable residual

functional capacity and vocational assessments, the ALJ concluded that Schaeffer could work as

---

[3] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[4] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

a cleaner/housekeeper, laundry worker or packer.  R. at 35.  Kinley's testimony established that those jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[5]  R. at 64-65.

## V.     Discussion

Schaeffer attended classes at Conneaut Lake Elementary School when she was young.  R. at 320.  She sustained several head injuries during her childhood.  R. at 389.  Due to academic deficiencies, Schaeffer had to repeat the seventh grade.  R. at 388.  At the age of twelve, Schaeffer became suicidal and started to cut her wrists.  R. at 257.  She was eventually hospitalized for inpatient psychiatric treatment.  R. at 389.  Before reaching the age of fifteen, Schaeffer had three additional psychiatric hospitalizations.  R. at 389-390.  Her treatment regimen included therapy to combat bulimia.  R. at 317, 389.

At the age of fifteen, Schaeffer became pregnant with her first child.  R. at 257.  She dropped out of school after completing the eleventh grade.  R. at 388.  Schaeffer got married at the age of eighteen.  R. at 265.  She eventually attended night classes and obtained an adult secondary diploma.  R. at 47.

Schaeffer sporadically worked as a parking attendant for the Crawford County Fair.  R. at 230, 240.  During the fall of 2004, she stocked products at a Dollar General department store for roughly one month.  R. at 235, 266.  Due to an intervening pregnancy, Schaeffer had to stop taking her psychiatric medications.  R. at 235.  She was also afflicted with an ovarian cyst, which prevented her from lifting some of the products that she was expected to shelve.  R. at 266.  Because of resulting disagreements with her supervisor, Schaeffer quit her job.  R. at 266.

---

[5] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy."  *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003).  This burden is commonly satisfied by means of vocational expert testimony.  *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

Between February 2006 and August 2006, Schaeffer sold Avon products out of her home. R. at 240. She never worked for an extended period of time. Schaeffer ultimately gave birth to four children, including three sons and one daughter. R. at 388. Three of Schaeffer's children were living with her at the time of the hearing. R. at 47.

On November 6, 2008, Dr. Glenn W. Thompson performed a consultative psychological evaluation of Schaeffer.[6] R. at 263-274. After completing the evaluation, Dr. Thompson reported that Schaeffer could not maintain her attention long enough to complete tasks. R. at 272. He asserted that she had "marked" limitations in her abilities to carry out instructions, respond appropriately to changes in a routine work setting, and interact appropriately with supervisors, co-workers, and members of the general public. R. at 272-273. Dr. Thompson further stated that Schaeffer had "extreme" limitations in her abilities to make judgments concerning simple work-related decisions and respond appropriately to work pressures in a usual work setting. R. at 272-273.

For most of 2008 and 2009, Schaeffer sought psychiatric treatment at an outpatient clinic operated by Stairways Behavioral Health. R. at 328-330, 256-258. Dr. Humberto Dorta, a psychiatrist affiliated with the Meadville Community Health Center, later started to treat Schaeffer. R. at 332-340, 349-359, 383-385. Schaeffer saw Dr. Dorta on a monthly basis. R. at 50. She also attended counseling sessions with her treating therapist, Kim Doyle ("Doyle"), every other week. R. at 50.

Hubert Adams, a counselor employed by Pennsylvania's Office of Vocational Rehabilitation, referred Schaeffer for a psychological evaluation. R. at 309-310, 386-388. The evaluation was performed by Dr. Martin Meyer and Dr. Julie Uran on October 18, 2010. R. at

---

[6] Dr. Thompson's consultative psychological evaluation was evidently performed in connection with a previous attempt by Schaeffer to procure an award of benefits under the Act. R. at 263-274.

388-398.  In a written report discussing their examination findings, Dr. Meyer and Dr. Uran stated that Schaeffer's "strongest vocational preferences involve[d] outdoor activit[ies] and clerical work."  R. at 391.  They explained that her "vocational potentials" ranged from the "skilled"[7] to "professional" levels.  R. at 392.  Dr. Meyer and Dr. Uran further observed that Schaeffer "would have difficulties performing vocational activities at a competitive level" because of her "overwhelming depression and anxiety."  R. at 392.  It was recommended that Schaeffer apply for benefits under the Act.  R. at 392.  She protectively applied for SSI benefits on December 21, 2010.  R. at 24, 172.

On February 18, 2011, Dr. Michael Mercatoris performed a consultative psychological evaluation of Schaeffer in connection with her application for SSI benefits.  R. at 314-322.  Based on the findings of his evaluation, Dr. Mercatoris reported that Schaeffer had "moderate" limitations in her abilities to respond appropriately to work pressures in a usual work setting, respond appropriately to changes in a routine work setting, and interact appropriately with supervisors, co-workers, and members of the general public.  R. at 314.  Schaeffer was deemed to be only "slightly" limited in her abilities to understand, remember and carry out detailed instructions and make judgments concerning simple work-related decisions.  R. at 314.  In the narrative portion of his examination report, Dr. Mercatoris asserted that Schaeffer was able to "adapt to simple changes in a work or work-like situation" and "react to deadlines or schedules." R. at 322.

---

[7] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work.  Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity."  20 C.F.R. §§ 404.1568(c), 416.968(c).

Dr. Edward Jonas, a nonexamining psychological consultant, opined on March 4, 2011, that Schaeffer was "markedly" limited in her abilities to "accept instructions and respond appropriately to criticism from supervisors" and "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." R. at 74-75. He stated that she was only "moderately" limited in her abilities to "complete a normal workday and workweek without interruptions from psychologically based symptoms" and "perform at a consistent pace without an unreasonable number and length of rest periods." R. at 74. In his consultative report, Dr. Jonas accorded "appropriate weight" to the examination reports submitted by Dr. Thompson and Dr. Mercatoris. R. at 73.

Schaeffer went to the Meadville Medical Center on August 29, 2011, complaining of suicidal thoughts. R. at 343. Fearing that she would commit suicide, Schaeffer voluntarily admitted herself to the facility for inpatient treatment.[8] R. at 58. She was discharged on September 2, 2011, and instructed to pursue follow-up treatment with Dr. Dorta and Doyle. R. at 343-344.

On October 19, 2011, Schaeffer consumed excessive quantities of her medications. R. at 368. She was later taken to the Meadville Medical Center's intensive care unit in an ambulance. R. at 58, 361. A treatment note completed at the time of Schaeffer's arrival stated that she had telephoned her husband and threatened to kill herself. R. at 368. The deterioration in Schaeffer's condition was apparently precipitated by her husband's relationship with another woman. R. at 370, 377. Schaeffer was again admitted for inpatient treatment.[9] R. at 373. She was discharged on October 24, 2011. R. at 377.

---

[8] Pennsylvania law permits an individual who has reached the age of fourteen to voluntarily admit himself or herself for inpatient psychiatric treatment. 50 PA. STAT. § 7201.

[9] It is not clear whether Schaeffer was admitted on a voluntary basis, or whether she was involuntarily committed pursuant to 50 PA. STAT. § 7302. R. at 58.

At the hearing, Schaeffer acknowledged that she had no physical impairments that would adversely affect her ability to work. R. at 48. She confirmed that she was pursuing an award of SSI benefits solely because of her mental limitations. R. at 48. Schaeffer complained of panic attacks occurring whenever she was "out in public." R. at 51. She described instances in which she had isolated herself from crowds in order to alleviate her anxiety. R. at 59. Schaeffer also testified that she had occasionally forgotten to eat meals and take showers because of symptoms caused by her mental impairments. R. at 62.

Schaeffer challenges the ALJ's findings at the third and fifth steps of the sequential evaluation process. ECF No. 12 at 12-25. She contends that the ALJ erred in declining to find her to be *per se* disabled under Listings 12.04, 12.06 and 12.08. *Id.* at 12-20. Schaeffer also maintains that the ALJ's residual functional capacity assessment failed to account for all of her mental limitations. *Id.* at 22-24. Both of these issues center on the ALJ's evaluation of the relevant documentary and testimonial evidence.

The Listing of Impairments describes impairments which render a claimant *per se* disabled without regard to his or her age, education, or past work experience. *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled under the Commissioner's regulations, a claimant must demonstrate that his or her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). An impairment "matches" a Listing only if it satisfies *all* of the relevant medical criteria. *Id.* at 530. An impairment is "equivalent" to a Listed Impairment only if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar Listing. *Id.* at 531. The claimant bears the burden of presenting

11

evidence to support his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

The ALJ concluded that Schaeffer's impairments did not satisfy the "B" or "C" criteria of Listings 12.04, 12.06 and 12.08. R. at 28-30. Although Schaeffer takes issue with that conclusion, she does not tailor her arguments to the applicable criteria. Instead, she advances more generalized arguments about why she believes that the ALJ's evaluation of the evidence was deficient. *Id.* at 12-20. None of the consultative examiners rendered an opinion as to whether Schaeffer's impairments satisfied the specific criteria applicable under the Listings. R. at 263-274, 314-322, 388-398. Dr. Jonas reported that the "B" and "C" criteria were not satisfied. R. at 72. With the exception of the fourth "B" criterion, the ALJ's findings were identical to those of Dr. Jonas. R. at 28, 72. Dr. Jonas stated that the record contained "insufficient evidence" that Schaeffer had experienced extended episodes of decompensation. R. at 72. During the period of time elapsing between Dr. Jonas' assessment and the rendering of the ALJ's decision, Schaeffer was hospitalized twice. R. at 57-58, 343-348, 361-382. The ALJ treated those hospitalizations as extended episodes of decompensation. R. at 28. Even if it is assumed that the periods of inpatient treatment were sufficient to satisfy the fourth "B" criterion, the ALJ's findings concerning the remaining criteria are adequate to sustain his determination that Schaeffer was not *per se* disabled. R. at 26-30.

The remaining arguments advanced by Schaeffer relate to the ALJ's assessment of her residual functional capacity. In determining Schaeffer's work-related abilities and limitations, the ALJ relied on the assessments provided by Dr. Meyer,[10] Dr. Uran, Dr. Mercatoris and Dr. Jonas. R. at 31-34. Schaeffer claims that the ALJ mischaracterized the opinions expressed by

_____

[10] Dr. Meyer and Dr. Uran co-authored the same report. R. at 393. Although the ALJ only mentioned Dr. Uran by name, he specifically referred to the report prepared by both consultative examiners. R. at 32, 34.

12

Dr. Meyer and Dr. Uran. ECF No. 12 at 17-18. Contrary to Schaeffer's suggestion, the report

submitted by Dr. Meyer and Dr. Uran did not necessarily support a finding of disability. Dr.

Meyer and Dr. Uran stated that Schaeffer's "vocational potentials" ranged "from skilled to some

professional levels." R. at 392. They observed that her "strongest vocational preferences

involve[d] outdoor activit[ies] and clerical work." R. at 391. Dr. Meyer and Dr. Uran

acknowledged that Schaeffer's "overwhelming depression and anxiety" would cause her to

"have difficulties performing vocational activities at a *competitive* level." R. at 392 (emphasis

added). The ALJ accounted for that deficiency by restricting Schaeffer to a range of work that

did not require her to satisfy "high quotas" or pay "close attention to quality production

standards." R. at 30. The findings articulated by Dr. Meyer and Dr. Uran did not compel the

conclusion that Schaeffer was incapable of performing the narrow range of "unskilled"[11] work

described in the ALJ's decision and discussed by Kinley at the hearing.[12] R. at 30-35, 63-65.

Dr. Mercatoris found Schaeffer to be "moderately" limited in her ability to interact

appropriately with supervisors and co-workers. R. at 314. Dr. Jonas reported that Schaeffer was

"markedly" limited in her abilities to "accept instructions and respond appropriately to criticism

from supervisors" and "get along with coworkers or peers without distracting them or exhibiting

behavioral extremes." R. at 74-75. At the hearing, Kinley testified that no jobs existed in the

national economy for an individual who would react inappropriately to supervision. R. at 65.

---

[11] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[12] Mickey Zelasco, a blended case manager employed by Crawford County Human Services, construed the report submitted by Dr. Meyer and Dr. Uran to mean that Schaeffer was "untrainable." R. at 360. The ALJ evidently had a different understanding of the examination report. R. at 32, 34. Because the ALJ's findings were based on a reasonable interpretation of the report, they must be accorded deference under the present circumstances. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991)(deferring to an administrative law judge's assessment of "conflicting and internally contradictory evidence").

Schaeffer argues that the ALJ improperly relied on the opinions of Dr. Mercatoris and Dr. Jonas without accounting for the contact limitations described in their consultative reports. ECF No. 12 at 20. In light of the existing record, however, it was reasonable for the ALJ to conclude that Schaeffer's difficulties in dealing with supervisors and co-workers were adequately addressed by the portion of the residual functional capacity assessment precluding "team work." R. at 30. An individual with a "marked" limitation in a given area is not completely precluded from performing the relevant work-related activity. *Hansford v. Astrue*, 805 F.Supp.2d 140, 146, n. 5 (W.D.Pa. 2011). Although Dr. Jonas indicated that Schaeffer was "markedly" limited in her ability to deal with supervisors and co-workers, he nevertheless stated that she was able to "accept instruction" and "carry out directives." R. at 74-75. Furthermore, the documentary evidence suggests that Schaeffer's disagreement with her supervisor at the Dollar General department store centered on temporary physical limitations associated with her pregnancy. R. at 235, 266. Under these circumstances, the Court has no reason to disturb the ALJ's factual findings. *Chanbunmy v. Astrue*, 560 F.Supp.2d 371, 387 (E.D.Pa. 2008)(holding that an administrative law judge had adequately accounted for limitations in a claimant's abilities to "relate to co-workers" and "interact with supervisors" by restricting her to a range of work that did not entail "team work").

The probative force of any medical opinion can only be judged in relation to the evidentiary record as a whole. *Miller v. Commissioner of Social Security*, 172 F.3d 303, 304 (3d Cir. 1999). When conflicting medical evidence is presented, an administrative law judge is ordinarily "free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). Under normal circumstances, a decision to reject a medical opinion favoring a claimant's position must be

accompanied by an explanation as to why that opinion is not being accepted. *Reefer v. Barnhart*, 326 F.3d 376, 381-382 (3d Cir. 2003). Schaeffer contends that the ALJ improperly failed to explain his reasons for rejecting Dr. Thompson's examination findings. ECF No. 12 at 19-20.

When Schaeffer applied for benefits under the Act, she listed January 21, 1999, as her alleged onset date. R. at 170, 172. Given her minimal work history, however, Schaeffer was never insured for benefits under Title II. R. at 87. SSI benefits cannot be awarded on a retroactive basis. 20 C.F.R. § 416.335. Schaeffer protectively applied for SSI benefits on December 21, 2010. R. at 24, 170, 172. The applicable period of time began on that date and ended on the date of the ALJ's decision. R. at 35. Dr. Thompson's consultative psychological evaluation was performed more than two years before Schaeffer's protective filing date. R. at 263-274. Given the "substantial lapse of time" between the evaluation and the filing of the application for benefits, Dr. Thompson's opinion was not significantly probative of Schaeffer's condition during the relevant period of time. *Reilly v. Office of Personnel Management*, 571 F.3d 1372, 1382 (Fed.Cir. 2009). Because that opinion was not pertinent to the period of time in dispute, the ALJ was not required to discuss it in his decision. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 204 (3d Cir. 2008).

Schaeffer asserts that the ALJ failed to properly consider her subjective complaints. ECF No. 12 at 20-22. Since the record contains objective evidence of medically determinable impairments that could reasonably be expected to cause the symptoms alleged by Schaeffer, the ALJ was required to give "serious consideration" to the symptoms described in Schaeffer's testimony. *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). Nonetheless, the ALJ was not required to credit Schaeffer's subjective complaints in every conceivable respect. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 363 (3d Cir. 2011). Schaeffer

testified that she tended to suffer panic attacks when she encountered members of the general public.  R. at 51, 59-60.  The ALJ addressed that concern by restricting Schaeffer to a range of work involving "no exposure to crowds" and only "incidental interactions with the public."  R. at 30.  When questioned by the ALJ about her daily activities, Schaeffer acknowledged that she could clean her house, do laundry, go grocery shopping, and care for her children.  R. at 52-53.  In light of the testimonial record, the ALJ did not act unreasonably in determining that Schaeffer could work as a cleaner/housekeeper, laundry worker or packer.  R. at 35.

A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity unless the question eliciting that testimony makes reference to all of the claimant's functional limitations.  *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002).  Where a credibly established limitation is not described, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation.  *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004).  Schaeffer questions the ALJ's evaluation of Kinley's testimony.  ECF No. 12 at 22-24.  A careful review of the record reveals that every functional limitation adopted by the ALJ was conveyed to Kinley at the hearing.  R. at 30, 63-64.  Under these circumstances, the argument advanced by Schaeffer amounts to a direct attack on the underlying residual functional capacity assessment rather than a challenge to the probative value of Kinley's testimony.  *Rutherford v. Barnhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005).  For the reasons discussed earlier, the ALJ's residual functional capacity finding is "supported by substantial evidence."  42 U.S.C. § 405(g).  Kinley testified that no jobs existed in the national economy for an individual whose impairments would necessitate frequent absences or cause him

16

or her to remain "off task" for ten to fifteen percent of a standard workday.[13]  R. at 65.  Because

Schaeffer was not found to be inhibited by such extreme functional limitations, Kinley's

testimony pertaining to a *hypothetical individual* with those limitations did not preclude a finding

that *Schaeffer* could perform the duties of jobs existing in significant numbers in the national

economy.  *Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987).

## VI.    **Conclusion**

The Commissioner's decision denying Schaeffer's application for SSI benefits is

"supported by substantial evidence" and will be affirmed.  42 U.S.C. § 405(g).  Schaeffer's

motion for summary judgment (*ECF No. 11*) will be denied, and the Commissioner's motion for

summary judgment (*ECF No. 13*) will be granted.  The Commissioner's decision denying

Schaeffer's application for SSI benefits will be affirmed.  An appropriate order will follow.

s/Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge

cc:    All counsel of record.

---

[13] The inquiry required under the Social Security Act does not account for any "reasonable accommodations" mandated by Title I of the Americans with Disabilities Act of 1990 [42 U.S.C. §§ 12111-12117].  *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 95 (3d Cir. 2007).